**Danny DIXON**

v.

**Dr. George J. BETO, Director Texas Department of Corrections.**

**Civ. A. No. 70–H–643.**

United States District Court,
S. D. of Texas,
Houston Division.

Nov. 25, 1970.

Danny Dixon, pro se.

Robert Darden, Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

SINGLETON, District Judge.

*Memorandum and Order:*

On January 9, 1970, when Danny Dixon, petitioner herein, appeared before the State 12th District Court with retained counsel, he pled guilty to an assortment of charges—burglary, theft, robbery by assault and by firearm—and received a sentence of thirty-five years imprisonment. Petitioner seeks to have that judgment and sentence set aside in this application for a writ of habeas corpus under 28 U.S.C. §§ 2241 *et seq.* His sole

1

contention is that the state court "refused all attempts by me in-time and out-of-time to appeal and finally refused to accept my habeas corpus and sent it back to me." Respondent opposes the application on the grounds that petitioner deliberately by-passed the Texas appellate procedure and that in any event petitioner has failed to exhaust his available state remedies under Article 11.07, Vernon's Ann.C.C.P. What petitioner would raise on appeal or actually did raise in his state court petition for habeas corpus is not clear from the pleadings, but it appears that petitioner would base such an appeal upon a contention that his plea of guilty was coerced.

The petition alleges that petitioner wrote a letter to the Court on January 10, 1970, requesting an appeal. No reply was made to this letter, and petitioner, three days later, was removed to the Texas Department of Corrections to begin serving his sentence. Petitioner apparently also requested an appeal again after the ten day period proscribed by Art. 44.08(c), V.A.C.C.P. had expired. The petition further reflects that petitioner communicated his desire to appeal to his retained attorney in open court, but that his plea fell on deaf ears. On March 28, 1970, petitioner sought to file an application for a writ of habeas corpus with the trial court. There is no record of it ever having been filed, but according to petitioner, the judge returned it to him with a cover letter saying he had refused it. Thereafter, petitioner filed the present application for federal habeas relief.

Article 11.07, V.A.C.C.P., enacted by the Texas Legislature several years ago, provides a comprehensive postconviction remedy for those convicted in Texas courts. It contemplates that petitions for habeas corpus should first be presented to the convicting court, Ex parte Young, 418 S.W.2d 824 (Tex.Cr.App.1967). The exhaustion procedure within Article 11.07 has been federally approved. Texas v. Payton, 390 F.2d 261 (5th Cir. 1968).

■ However, this is not to say that a federal district court would be an im-proper forum in which such a petitioner may seek relief after exhausting all his state remedies. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), set forth six criteria to guide federal district judges in granting or denying evidentiary hearings to habeas petitioners. The third criteria listed in *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757, 9 L.Ed.2d at 786, was "(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing"; the sixth standard was "(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." The court continued to comment that "Even where the procedure employed does not violate the Constitution, if it appears to be seriously inadequate for the ascertainment of the truth, it is the federal judge's duty to disregard the state findings and take evidence anew." Our final category is intentionally open-ended because we cannot here anticipate all the situations wherein a hearing is demanded. It is the province of the district judges first to determine such necessities in accordance with the general rules. The duty to try the facts anew exists in every case in which the state court has not after a full hearing reliably found the relevant facts.

■ Since the state courts, in most instances, seem to summarily deny prisoners' petitions without deferrence for the need of evidentiary hearings, it seems unfortunately necessary for the federal courts to cross the traditional line of federal-state comity and provide a much delayed evidentiary hearing or to release the prisoners without prejudice to the state to retry them. Let it be understood that this Court wholeheartedly concurs in the holding of Childress v. Beto, 273 F.Supp. 401 (D.C.Tex.1967) where it was stated: "The correct and desirable forum for fact-finding hearings of the type outlined in Townsend v. Sain, *supra*, is the state court where the petitioner was originally tried."

■ Petitioner here complains that he was denied his right to appeal. It is

undisputed that a prisoner has a right to appeal. An indigent is entitled to an appeal with a transcript of the first appellate proceedings. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The case of Tindol v. Beto, 392 F.2d 582 (5th Cir. 1968) (applying Texas law) is instructive in this area for in that case, as in the instant case, the defendant was represented by retained counsel. The attorney never told the defendant of his right to have a statement of facts for the purpose of a first appeal. "Although appellant failed to file the required affidavit of inability to pay, there is no evidence that counsel informed him * * *. These facts do not support a conclusion that the failure to request a Statement of Facts was due to petitioner's deliberate conduct or that there was a knowing waiver of his rights."

Nor is there evidence to support a conclusion that appellant waived his right to be represented by counsel on the appeal of his conviction, Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Baker v. Wainwright, 391 F.2d 248 (5th Cir., Mar. 14, 1968)." Tindol at 584. (The court then held that if Texas should grant appellant a meaningful appeal the constitutional infirmity rendering his detention illegal would be cured.)

The Fifth Circuit has taken admirable steps to insure justice in the appellate process. As in Baker v. Wainwright, 391 F.2d 248, 249 (5th Cir. 1968), when the court stated:

"In Entsminger v. Iowa, 1966, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501, the Supreme Court said:

As we have held again and again, an indigent defendant is entitled to the appointment of counsel to assist him on his first appeal, Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and appointed counsel must function in the active role of an advocate, as

opposed to that of amicus curiae, Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

"In Swenson v. Bosler, 1966, 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33, the Supreme Court held,

We think the documents contained in this transcript demonstrate that respondent did indicate to the Missouri courts his desire for counsel on appeal. But even if such a request had not been made, we do not think its absence would amount to a waiver of respondent's rights. It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70. *When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel.* (Emphasis supplied.)"

The Fifth Circuit again upheld this principle in the Texas case of Beto v. Martin, 396 F.2d 432 (5th Cir. 1968). In *Martin*, the state trial judge did something that we have no record of such trial judge doing in the instant case, namely, after defendant's retained counsel was dismissed, knowing of the defendant's desire to appeal, advised him of his right to counsel on appeal in the event he was an indigent. The *Martin* case established that the court must know of the defendant's indigency and must know of the desire to appeal in order to show a denial of counsel.

In the instant case the attorney allegedly left the trial before sentence was given, the petitioner himself gave notice of appeal to the court the day after sentencing (i. e., January 10, 1970); on January 13, 1970, the petitioner was in-

**4**

carcerated at the Diagnostic Center of the Texas Department of Corrections and thus was unable to correspond further with the court for an in-time appeal; two months later the petitioner was able to correspond and filed a habeas corpus with the court which was refused; on April 17, 1970, the petitioner filed an affidavit with the court; the petitioner did not specifically request counsel, only the right to appeal; yet it seems that petitioner may be entitled to both if it is established that the court knew of his indigency. An evidentiary hearing apparently would be called for to determine if petitioner's April 17th affidavit so informed the court. Or, at least, to determine what happened to petitioner's notice of appeal *pro se*. At this time, the Court expresses no view on the merits of petitioner's habeas corpus contentions. Nevertheless, the *Young* opinion as well as the statute is obtuse on the technical procedure that follows the denial of a prisoner's first petition for habeas in the convicting court. The state trial judges' practices apparently vary. Hence, even the most enlightened attorney would have difficulty in perceiving the appropriate measures to be taken. The need for clarification of the procedure after denial of habeas in a state trial court is long overdue, as is the institution of a standard whereby the sentencing judge gives the defendant an abbreviated summary of his right to appeal, his right to have counsel, retained or appointed, on a first appeal and that the defendant should notify the court of a desire for such an appeal within the ten-day in-time appeal period. In the interest of more efficient administration of justice, the state trial court could also include in the form denial of any habeas where a prisoner should direct his next petition in the state system. The few extra moments these procedures would take by the official hand of the trial court could save hours of appellate time both for the prisoner and those involved in the appellate court system. The burden to the state trial court would not be overwhelming. As Bacon once noted, "It would be an unsound fancy and self-contradictory to expect that things which have never yet been done can be done except by means which have never yet been tried."

The instant case also points out the glaring need for state procedures to be refined to a level where documents are systematically marked and recorded as they enter the court's file. Many habeas corpus petitioner's allege the misplacement or loss of records in the state court's handling of their case. The state courts are often unable to show an accurate filing system to controvert such allegations. The present case appears to be just such a case.

■ The state prisoner in the instant case is one of many caught in the confusing web of Art. 11.07, since his petition was allegedly returned to him by the trial judge he cannot be sure he will not be violating the mandate of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) in bypassing any available state remedy by not reapplying to the state trial court. Unfortunately, it does not appear from the face of the petition that petitioner has ever presented the merits of his claim to the Texas Court of Criminal Appeals, but that he came directly to federal court before doing all that Art. 11.07 required of him. Thus, it will be necessary to dismiss the petition so that petitioner can do what Texas v. Payton, *supra*, and 28 U.S.C. § 2254 demand that he do before seeking federal habeas corpus.

It is, therefore, ORDERED that the petition for a writ of habeas corpus be, and the same is hereby, dismissed for failure to exhaust state remedies.

The Clerk is directed to file this Memorandum and Order and send copies to petitioner and the Attorney General of Texas.